**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **REGINA S. CAVES, surviving spouse** ) | |
| **of WESLEY BRYAN CAVES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 15-CV-125-CVE-PJC |
| ) | |
| **BEECHCRAFT CORPORATION,** *et al*, ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Currently before the Court is the Third Motion to Compel filed by the Plaintiff, Regina S. Caves, surviving spouse of Wesley Bryan Caves. [Dkt. No. 42]. In her Motion, Plaintiff asks the Court to overrule Defendants' objections to her Requests for Production Nos. 3 and 35, and for an order compelling Beechcraft to disclose communications between itself and the National Transportation Safety Board ("NTSB"), which were listed as privileged on Beechcraft's Privilege Log.

*Applicable Legal Principles*

It is generally understood that discovery under the Federal Rules is limited by relevance and burdensomeness. *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975); *Littlebear v. Advanced Bionics, LLC*, 2012 WL 2979023, *1 (N.D. Okla. July 20, 2012). Following the 2000 amendment of Fed. R. Civ. P. 26, the Tenth Circuit Court of Appeals noted:

> This change implemented a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action. Accordingly, when a party objects that discovery goes beyond that relevant to the claims or defenses, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is

1

> relevant to the subject matter of the action." Fed. R. Civ. P. 26 advisory committee's note (2000). This good-cause standard is intended to be flexible. *Id*. When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be.

*In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 -1189 (10th Cir. 2009) (citations omitted).

While Rule 26 still contemplates liberal discovery and broad concept of relevance, the Rule also recognizes that discovery must be proportionate to the case and issues at hand. Fed. R. Civ. P. 26(b)(2). Trial courts have broad discretion in managing discovery matters and are subject to review only for abuse of discretion. *Smith v. Sentinel Inc. Co., Ltd.*, 2011 WL 2883433, *1 (N.D. Okla. July 15, 2011).

Rule 26(b)(1) provides that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party…. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). At the discovery phase of litigation "relevancy" is broadly construed.

When the requested discovery appears relevant, the party opposing discovery has the burden of establishing the lack of relevance by demonstrating that the requested discovery does not come within the scope of relevance set forth in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Barton v. Tomacek*, 2012 WL 4735927, *4 (N.D. Okla. Oct. 3, 2012; *Smith*, *supra*. Document requests must describe what is being sought with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A). *See Howard v. Segway, Inc.*, 2013 WL 869955, *2 (N.D. Okla. March 7, 2013). Objections to discovery requests must be stated with specificity. Mere boilerplate objections or the familiar litany of "overly broad, vague or burdensome," without more, is not sufficient. *Howard*, *supra*, at *3; *Leisure Hospitality, Inc. v.*

*Hunt Properties, Inc.*, 2010 WL 3522444, * 3 (N.D. Okla. Sept. 8, 2010); *Wyatt v. ADT Sec. Services, Inc.*, 2011 WL 1990473, *2 n.1 (N.D. Okla. May 23, 2011).*Co., Ltd.*, 2011 WL 2883433, *1 (N.D. Okla. July 15, 2011).  Furthermore, discovery "information may be withheld, even if it is relevant to the lawsuit and essential to the establishment of plaintiff's claim" if the information is privileged. Baldrige v. Shapiro, 455 U.S. 345, 360 (1982).

## *DISCUSSION*

### *Defendants' Objections*

As an initial matter, Plaintiff complains that Defendants' Responses to Requests for Production Nos. 3 and 35 were improperly responded to "with generic pat objections" (Dkt. No. 42, p. 3) and asks the Court to overrule Defendants' objections and to compel "full, complete and responsive answers" (*Id*. at pp. 1, 3). However, Plaintiff has done little to address the Objections or provide any argument as to why the Court should overrule them.

### **The Requests and Responses**

> **REQUEST NO. 3**: Produce for examination, inspection and copying any and all depositions or trial testimonies in other litigation of the following; or documents authored by the following, which pertain in any way to the Premier Aircraft, flight, accident, or Caves, by any of Defendant's employees or representatives including, but not limited to, the following: [names omitted].
>
> **RESPONSE NO. 3**: To the extent this request seeks records related to other cases or accidents, defendant objects on the basis that it is overly broad and seeks information that is irrelevant to the subject case. Without waiving said objection, defendant states that there are no depositions taken of the above-listed individuals in the related actions concerning the subject accident. Additionally, defendant objects to the request for "documents authored" by the employees listed above on the grounds that the request is vague and ambiguous and it is not apparent to defendant what plaintiff is requesting. Without waiving said objection, defendant states that non-privileged communications concerning the accident investigation and subject aircraft involving the above-individuals are produced herewith. The factual report authored by defendant's lead accident investigator, Brian Weber, is not yet complete. When it is finalized, defendant will supplement its response to this request by producing the report and all of its referenced attachments.

>**REQUEST NO. 35:** Produce all correspondence. . . concerning all correspondence between the defendant and any United States governmental regulatory agency and any other country governmental regulatory agency with respect to any concerns, notifications, compliance issues, warnings, probations, fines, sentences, verdicts, judgments, disciplinary actions, discussions and procedures.
>
>**RESPONSE NO. 35:** Defendant objects to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The request as written is not limited to the subject aircraft or Model 390, nor is it limited in time-frame.

[Dkt No. 42, pp.6-7]. It should not come as a surprise to Plaintiff that Defendants object to such requests as vague and overly broad. As this Court previously discussed at length in *Howard, supra*, at *2, if the party seeking discovery fails to describe with reasonable particularity what she is seeking, as required by Fed.R.Civ.P. 34(b)(1)(A), it sets the stage for the discovery problems that inevitably will follow.

Request No. 3 is overly-broad, vague and seeks irrelevant information. A request for "any and all" testimony concerning any "other litigation," regardless of connection to the accident or aircraft at issue, is clearly objectionable. Neither Defendants nor the Court should have to guess what Plaintiff is really seeking. Nor is it the Court's job to redraft Plaintiff's discovery requests.

The second half of Plaintiff's Request No. 3 is more particular and specifically requests documents authored by defendants' employees or representatives concerning the aircraft at issue, the aircraft's flight leading up to the accident at issue, the accident itself, and the pilot of the aircraft. While Plaintiff's definition of "documents" is needlessly verbose and of little practical value (*see Howard, supra*, at *2), the Court disagrees with Defendants that this portion of the request is vague and ambiguous. Defendants did respond, but did so "without waiving said objection," creating an ambiguity as to whether *all* non-privileged documents have been

4

produced. *See Howard, supra*, at *3-4. Accordingly, Defendants need to supplement the response and address whether *all* documents concerning the aircraft, the flight, the accident, and the pilot were produced or are included in the Privilege Log.

As originally drafted, Request No. 35 does not identify with reasonable particularity what is being sought. Where, for example, would one begin looking for "*all* correspondence" "concerning *all* correspondence" between Defendants and *any and all* regulatory agencies of *any* country in the world for any and all periods of time? *See Howard, supra*, at *2. Perhaps recognizing the deficiencies of the request, Plaintiff's counsel agreed to limit the Request somewhat temporally to "beginning at that point in time when the development and/or certification process of the Model 390 or its components began" and agreed to further limit the Request to correspondence concerning "the Model 390 aircraft, or and such other communications which might generically apply to Defendants' products which would include the Model 390 aircraft." [Dkt. No. 42-7, pp. 2, 4].

Although a slight improvement, Plaintiff's counsel's attempted revisions to Request No. 35 are still overly broad. For example, the timeframe for requested document production is still objectionable. The Court cannot, and will not, begin to dissect the Model 390 aircraft and all of its component parts in order to determine an appropriate timeframe for Plaintiff. Moreover, "communications which might *generically* apply to Defendants' products" (emphasis added) are not described with the reasonable particularity required by Rule 34. Therefore, Defendants' objections to Request No. 35 are sustained.

### *Beechcraft's Privilege Log*

The bulk of the parties' disagreement concerns items listed on Beechcraft's Privilege Log. In response to interrogatories, Defendants stated that in forming their responses, they relied

upon NTSB factual reports and the investigation that Beech participated in with the NTSB. [Dkt No. 42, p. 8]. Those reports and other communications Beech had with the NTSB were not produced during discovery but were identified in Beechcraft's Privilege Log, which was produced in response to Request for Production No. 3 and cites attorney client communication, attorney work product and a privilege pursuant to an NTSB regulation, 49 C.F.R. § 831.13. Plaintiff argues that this regulation does not create a privilege, particularly where the Defendants have placed the communications at issue by relying upon them in other discovery responses.

The NTSB has been granted broad authority by Congress under the applicable enabling statute to investigate aviation mishaps. *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 637 (10th Cir. 1990) (*citing* 49 § U.S.C. 1903(b)(11) (revised by Pub.L. 103-272, July 5, 1994)). "The NTSB's function is to promote transportation safety by conducting independent accident investigations and by formulating safety improvement recommendations." *Brooks*, 920 F.2d at 646 (*quoting Graham v. Teledyne-Continental Motors*, 805 F.2d 1386, 1389 (9th Cir. 1986)) (internal quotations omitted); 49 U.S.C. § 1131. Under the enabling statutes, the NTSB is authorized to "prescribe regulations to carry out [its duties]" and to "prescribe regulations governing the notification and reporting of accidents involving civil aircraft." 49 U.S.C. §§ 1113(f), 1132(b). The NTSB "has exclusive authority to determine the probable cause of an accident" and "access to the investigation itself is strictly limited." *Brooks*, 920 F.2d at 638 (citation omitted); 49 U.S.C. § 1131; 49 C.F.R. § 831.12*; see also In re Air Crash at Dallas/Ft. Worth Airport on August 2, 1985*, 117 F.R.D. 392, 393 (N.D.Tex. 1987) ("the NTSB is an entirely autonomous entity"). The regulation Beechcraft relies upon in asserting a privilege states:

(a) Release of information during the field investigation, . . . shall be made only through the Board Member present at the accident scene, the representative of the Board's Office of Public Affairs, or the investigator-in-charge ["IIC"].

(b) . . . . **[N]o information** concerning the accident or incident **may be released** to any person not a party representative to the investigation (including non-party representative employees of the party organization) **before initial release by the Safety Board without prior consultation and approval of the IIC**.

49 C.F.R. § 831.13 (emphasis added).

Beechcraft is a party representative[1] in the NTSB's investigation [Dkt. No. 50-1, Ex. 1-A] and is accountable to the NTSB. *Brooks*, 920 F.2d at 637 (*citing* 49 C.F.R. § 831.11(b)). Beechcraft specifically sought guidance from the NTSB whether it could produce to Plaintiff draft NTSB reports, comments and emails in connection with this lawsuit and the NTSB unequivocally stated that the IIC had not approved release of any information outside the investigative parties. [Dkt. No. 50-1, Ex. 1-B]. However, the NTSB recognized that "restrictions on release of investigative information are temporary, and will be withdrawn upon publication of the final NTSB report on the accident." [*Id*.].

Plaintiff cites to three cases as authority that communications between the NTSB and Beechcraft are discoverable and not protected by privilege. However, *none* of those cases address the privilege raised by Beechcraft. *Starling v. Union Pacific R. Co*., 203 F.R.D. 468, 485 (D. Kan. 2011), *In re Aircrash Disaster near Roselawn, Ind., on Oct. 31, 1994*, 1997 WL 97096 (N.D. Ill. Feb. 20, 1997), *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 524 (N.D. Ill. 1990). The *Roselawn* and *Sioux City* cases are distinguishable and inapplicable to the case at hand as they discuss only attorney-client and work product privileges, and do not address NTSB regulations. In *Starling*, the issue was the admissibility at trial of

---

[1] The IIC is responsible for selecting participating parties to the NTSB's investigation. *Brooks*, 920 F.2d at 637; 49 C.F.R. 831.11(a).

factual information obtained during a NTSB investigation, including the NTSB report and deposition testimony; it did not address *any* privilege concerning discovery. 203 F.R.D. at 485. Plaintiff has not provided this Court with *any* authority supporting her assertion that no privilege exists - in direct contradiction to numerous regulations and in contradiction to the lengthy discussion in *Brooks* recognizing the NTSB's authority to complete its investigation without interference of owners and civil litigants. 920 F.2d at 639 (NTSB's mission is "litigation neutral"), *id*. at 645 (recognizing the potential adverse impact on communications between the NTSB and party representatives), *id*. (NTSB's attention should be focused on the needs of the investigation and not the desires of the owner), *id*. at 646 (the public does not have a right to be "present" while the NTSB report is being drafted), *id*. ("Wherever the parties may stand with respect to each other under applicable tort law, they stand on much different footing vis-à-vis the NTSB's investigation.") (*quoting Graham*, 805 F.2d at 1389), *id*. at 646 (the NTSB investigation is not a show for "silent note takers looking for someone to sue"); *see also Dallas Air Crash*, 117 F.R.D. at 394 (NTSB pre-decisional documents protected by privilege and not discoverable).

The NTSB has not yet issued its final report, but has issued interim reports that have been publicly released by the NTSB and are available on the NTSB's public docket. 49 C.F.R. § 845.31; *Brooks*, 920 F.2d at 638 ("although access to the investigation is strictly limited, the work-product of the NTSB is ultimately public and available to anyone") (defining "work-product" as "all factual information concerning the accident."). Other than counsel's stubbornness,[2] there is nothing prohibiting Plaintiff from requesting those records from the NTSB directly, as outlined by 49 C.F.R. §§ 837.1-837.4. The NTSB indicated additional records

---

[2] Counsel for Defendant suggested that Plaintiff's counsel contact the NTSB about the draft reports, and counsel for Plaintiff refused. [Dkt. No. 50-3, Ex. 3].

8

would become available after its final report issued. [Dkt. 50-1, Ex. 1-B]. As recognized in Brooks,

> The NTSB does not forbid private investigations conducted with an eye toward civil litigation. In fact, **after** its inquiry the Board releases any . . . records it took custody of while conducting its inquiry. 49 C.F.R. § 831.12(b). This material is ***then* available to litigants** to use in preparing their cases.

920 F.2d 634 (emphasis added). Indeed, such release is anticipated by Beechcraft, as stated in its Certification of Party Representative,

> **After** the [IIC] releases the parties and party participants from the restrictions on dissemination of investigative information specified in 49 C.F.R. § 831.13, **neither I nor my party's organization will in any way assert in civil litigation** arising out of the accident **any claim of privilege** for information or records received as a result of my participation in the NTSB investigation.

[Dkt. 50-1, Ex. 1-A] (emphasis added).

Plaintiff repeatedly complains about the unfairness of being denied access to communications between the NTSB and Beechcraft, a party participant to the investigation. Plaintiff accuses Beechcraft of being "in cahoots" with the NTSB, claiming Beechcraft might be manipulating the evidence and providing misrepresentations to the NTSB: "[g]arbage in, garbage out." [Dkt. No. 42, p. 11 and Dkt. No. 55, p. 3]. A similar argument was raised in *Brooks* and the Tenth Circuit rejected it:

> In making this suggestion, [Plaintiff] contends the manufacturers actually run the investigation while the NTSB takes a back seat. He sees the official investigation as little more than a cover-up by manufacturers. Under [Plaintiff]'s scenario, a verdict pinning an accident's cause on pilot error instead of on a manufacturers product is preordained whenever the owner [is denied access to part of the investigation]. In making these charges, [Plaintiff] ignores the checks built into the statutes and the NTSB rules that help ensure the investigation's credibility.

920 F.2d at 647. This Court agrees with the Tenth Circuit that Plaintiff's repeated suggestions of impropriety are "a disservice to the dedicated investigators by implying all NTSB investigations are compromised when a manufacturer is a party." *Id*. Plaintiff is not being prohibited from

9

prosecuting her case; as discussed above, much/all of the information Plaintiff is seeking to compel will be released at a later date; Plaintiff can obtain all of the preliminary information on the NTSB's public docket; Plaintiff has already had the opportunity to conduct an independent investigation; Plaintiff will have the opportunity to depose both NTSB employees and parties to the investigation. *Id*. Beechcraft has raised a valid privilege and will not be compelled to produce the documents on its Privilege Log.

Plaintiff's Third Motion to Compel (Dkt. No. 40) is hereby **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that Defendants are hereby **ORDERED** to supplement their response to Request No. 3 and state whether *all* documents concerning the aircraft, the flight, the accident, and the pilot were produced or are listed on the Privilege Log. In all other respects, the Third Motion to Compel as to Request No. 3 is **DENIED**. With respect to Request No. 35, the Third Motion to Compel is **DENIED**.

**IT IS SO ORDERED** this 29th day of January 2016.

_____
Paul J. Cleary
United States Magistrate Judge